**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

—————————————————————— :
                                          :
GEORGE S. VASILOPOULOS,                    :
                                          :
            Plaintiff,                     :
                                          :        Civil Action No. 08-05801 (JAG)
            v.                             :
                                          :              **OPINION**
SUPERIOR COURT OF NEW JERSEY,              :
ESSEX VICINAGE,                            :
PUBLIC DEFENDER'S OFFICE ESSEX             :
VICINAGE, ESSEX COUNTY                     :
PROSECUTOR'S OFFICE, CHARLES               :
DOLIN, ANN DOLIN, and RYAN DOLIN,          :
                                          :
            Defendants.                    :
—————————————————————— :


**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the application of pro se plaintiff George S. Vasilopoulos ("Plaintiff").  Plaintiff seeks to bring this action in forma pauperis ("IFP"), alleging violations of his constitutional rights, pursuant to 42 U.S.C. § 1983.  Having reviewed Plaintiff's application and the attached complaint (the "Complaint"), this Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915, and order the Clerk to file the Complaint.

Additionally, this Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  After

1

reviewing the Complaint, this Court concludes it should be dismissed for the reasons set forth in this Opinion.

## I.   BACKGROUND[1]

Plaintiff's original Complaint was filed on November 25, 2008.  (Pl. Compl. ¶¶ 1-5.)  In the original Complaint, Plaintiff alleged that the Superior Court, the Public Defender's Office, and the Prosecutor's Office all violated Plaintiff's constitutional rights and civil rights as a disabled person.  (Id. at ¶¶ 2, 4.)  Plaintiff specifically alleges that the Superior Court and the Public Defender's Office exhibited judicial bias (id. at ¶ 2) while the Prosecutor's Office acted with intentional bias, in violation of court rules (id. at ¶ 4).   Plaintiff demanded $10,000,000 in damages for pain and suffering.  (Id. at ¶¶ 2, 4.)

Plaintiff's Complaint stems from charges originally brought against him by Charles, Ann and Ryan Dolin, (collectively, the "Dolins") on March 12, 2008.  (Am. Compl., filed Dec. 2, 2008 (Docket No. 2) at ¶¶ 1, 7.)  According to the Amended Complaint and summons submitted by Plaintiff, Charles Dolin alleged that Plaintiff violated an existing restraining order.  (Id. at ¶ 7.)

Plaintiff sought representation from the Office of the Public Defender ("Public Defender's Office") on April 24, 2008, (id. at ¶ 8), and was contacted by Dennis Friel of the Essex County Adult Region on May 5, 2008, (id. at ¶ 9).  This preceded a scheduled hearing before the Honorable Harold W. Fullilove, in the Essex Vicinage of the Superior Court of New Jersey ("Superior Court").  (Id. at ¶ 10.)

---

[1] Plaintiff filed his original complaint on November 25, 2008.  (Pl. Compl. ¶¶ 1-5.) Subsequently, he filed fifteen amendments and supplemental filings.  The allegations set forth in this Opinion are drawn from all of the amendments and supplemental materials.

On June 21, 2008, Plaintiff filed a complaint in state court against Charles Dolin for giving false information to a law enforcement officer.  (<u>Id.</u> at ¶ 11.)  Plaintiff alleges that Mr. Dolin lied when he stated that Plaintiff violated a restraining order.  (<u>Id.</u>)  Thereafter, on July 24, 2008, at the Livingston Police Department, Plaintiff requested to make a supplemental report regarding this matter.  (<u>Id.</u> at ¶ 14.)  In the supplemental report, Plaintiff disputed the notion that he was at the Dolins' residence on the date in question.  (<u>Id.</u>)  At this time, Plaintiff signed a complaint against Ryan Dolin for filing a false report as well.  (<u>Id.</u> at ¶ 16.)

A hearing date was scheduled for August 18, 2008 to establish probable cause to issue summonses for Charles and Ryan Dolin as well as Plaintiff.  (<u>Id.</u> at ¶ 19.)  Upon the recusal of the Livingston Municipal Court judge, the Honorable Judge Anthony J. Frasca was assigned to hear the matter.  (<u>Id.</u>)  On August 11, 2008, Plaintiff requested that Judge Frasca recuse himself from the matter, as well.  (<u>Id.</u> at ¶ 20.)  Plaintiff's recusal motion alleged that both the judge and the Essex County Prosecutor's Office ("Prosecutor's Office") were biased against him.  (<u>Id.</u> at ¶¶ 20-22.)  Plaintiff implied that Judge Frasca did not intend to find probable cause to issue summonses at the August 18 hearing.  (<u>Id.</u> at ¶ 22.)

Prior to the scheduled August 18, 2008 hearing, the Prosecutor's Office wrote a letter to Judge Frasca on August 14, 2008.  (<u>Id.</u> at ¶¶ 23-24.)  The letter informed Judge Frasca that the State sought jurisdiction over the Dolins' complaint against Plaintiff, as well as Plaintiff's complaints against the Dolins.  (<u>Id.</u>)  Furthermore, the Prosecutor's Office requested that Judge Frasca not proceed with the summons hearing on August 18, since that office wished to present all of the matters to a grand jury.  (<u>Id.</u>)  Judge Frasca granted the request on August 20, 2008.  (<u>Id.</u> at ¶ 25.)

On August 25, 2008, Plaintiff wrote to the Division of Criminal Justice.  (Id. at ¶¶ 26, 28.)  In this letter, Plaintiff alleged that both the Public Defender's Office and the Prosecutor's Office were intentionally delaying the matter.  (Id. at ¶ 27.)  Plaintiff further alleged that the Prosecutor's Office was attempting to influence the matter unduly in its own favor and on behalf of the Dolins.  (Id.)  Interestingly, Plaintiff asserted that he had not been notified of a new hearing date.  (Id. at ¶ 28.)

Finally, Plaintiff wrote a letter to the Public Defender's Office on September 2, 2008.  (Id. at ¶¶ 32-33.)  In this letter Plaintiff complained that he was not receiving effective assistance from the attorney that the Public Defender's Office had assigned to him.  (Id.)  Plaintiff was also concerned that politics played an overt role in how his case was being handled.  (Id. at ¶ 33.)

Plaintiff submitted clinical psychology reports from Dr. Elvira Anselmi dated April 28, 2008 and July 2, 2008.  (Id. at ¶¶ 4-6.)  These reports indicate that Plaintiff had been under Dr. Anselmi's care since September 22, 2003 for a "neurological birth disorder."  (Id. at ¶ 4.)  According to Dr. Anselmi, Plaintiff's disorder left him with "profound cognitive deficits."  (Id.)  These deficits have left Plaintiff unable to "communicate quickly and concisely when he is in an anxiety-provoking situation, such as would occur during court proceedings."  (Id.)  Dr. Anselmi further explained that Plaintiff needs "extended time in processing verbal and written information."  (Id.)  Thus, according to Dr. Anselmi, Plaintiff is unable to make decisions in his own best interest in short periods of time.  (Id.)

After establishing Plaintiff's mental capabilities, Dr. Anselmi explained that Plaintiff could not comprehend the pre-existing restraining order.  (Id. at ¶ 5.)  Dr. Anselmi specifically stated, "[t]he complexity of the order as it stands makes it impossible for [Plaintiff] to understand

and therefore abide by its terms fully." (Id.)  She concluded that Plaintiff requires appropriate accommodations as stipulated by the Americans with Disabilities Act (ADA) and identified those accommodations as being a revised order.  (Id.)

Beginning on December 15, 2008, Plaintiff began sending an array of letters to this Court. The purpose of the December 15 letter was to inform this Court that Plaintiff had not received a response to his IFP application.[2]  (Letter to Judge Greenaway, filed Dec. 16, 2008 (Docket Entry No. 3).)  Plaintiff wrote to this Court on January 5, 2009.  (Am. Compl., filed Jan. 5, 2009 (Docket No. 4).)  At that time, Plaintiff requested to add parties to his original complaint.  (Id.) Plaintiff specifically requested to add Charles, Ann, and Ryan Dolin as defendants.  (Id.) Plaintiff stated that he chose to amend his Complaint "for the failure of the production of a defendant, delay in court responses and ex parte communication with [the Dolins' counsel]." (Id.)  He asserts that the Dolins were part of the proceedings at the Superior Court level and that they "have been taking advantage of [his] Cognitive Disability."  (Id.)  According to Plaintiff, the Dolins' actions deprived him of his civil rights as stated within the Constitution.  (Id.)

Plaintiff requested to amend his complaint again on January 6, 2009.  (Letter from Pl. Req. to Am. Compl., filed Jan. 6, 2009 (Docket No. 5).)  Plaintiff attempted to include assault, libel and slander claims in conjunction with the Americans with Disabilities Act within that iteration of the Complaint.[3]  (Id.)

On January 12, 2009, Plaintiff sent this Court a hospital report from the Saint Barnabas Medical Center Emergency Department.  (Letter with attachments submitted by Pl., filed Jan. 12,

---

[2] Plaintiff completed his IFP application on November 25, 2008.

[3] Assault, libel, and slander are state law claims, and are not addressed in the ADA.

2009 (Docket No. 6).)  The report was dated December 12, 2008.  (Id.)  The report showed that

Plaintiff was treated for a seizure on December 11, 2008 at Saint Barnabas Medical Center in

Livingston, N.J. and suffered from anxiety and emotional distress.  (Id.)

On January 21, 2009, Plaintiff once again sought to amend his complaint.  (Letter from

Pl. Req. Am. Compl., filed Jan. 21, 2009 (Docket No. 7) at 4.)  Plaintiff claimed that he was not

given adequate notice to testify at the grand jury hearing.  (Id. at ¶ 1.)  Plaintiff alleged that he

was informed that he could testify at 11:00 a.m., although the grand jury session was being held

at 8:30 a.m.  (Id.)  Within his letter to this Court, Plaintiff continued to state that the Prosecutor's

Office, the Dolins, and the Dolins' lawyer all intentionally engaged in a grand jury session for the

sole purpose of entertaining a contempt of court charge against him.  (Id.)  Plaintiff also stated

that he had requested pro bono counsel and was waiting for an answer.[4]  (Id. at ¶ 2.)

On January 28, 2009, Plaintiff wrote two separate letters to amend his Complaint yet

again.  (Letter from Pl. Re: Am. Compl., filed Jan. 28, 2009 (Docket No. 9) at 1; Letter from Pl.

Re: Am. Compl., filed Jan. 28, 2009 (Docket No. 10).)  In the first letter Plaintiff had included a

report[5] from the Essex County Sheriff's Office that related that he had a seizure shortly after a

hearing with Judge Frasca on August 18, 2008.  (Letter from Pl. Re: Am. Compl., filed Jan. 28,

2009 (Docket No. 9) at ¶ 2.)  As an attachment to the January 28, 2009 letter to this Court,

Plaintiff enclosed a letter that he wrote to Judge Patricia K. Costello, an Essex County Superior

---

[4] Since Plaintiff's complaint is being dismissed, with prejudice, his application for pro bono counsel is also denied.

[5] The report, dated January 8, 2009, was based on Plaintiff's assertions to the Essex County Sheriff's Office.

Court judge, on September 4, 2008, asking to transfer Plaintiff's case to Trenton.[6]  (Id. at ¶¶ 4-5.)
Plaintiff requested the transfer because he felt that the Essex Vicinage was tainted with political
prejudice against him.  (Id.)  Plaintiff claimed that he had an audio tape of "unbelievable
statements" made on the record from the courtroom and from public defenders in Judge Frasca's
courtroom.  (Id.)

        In the second January 28, 2009 letter to this Court, Plaintiff reiterated that he was not
afforded the opportunity to testify at the grand jury session that took place on January 20.  (Letter
from Pl. Re: Am. Compl., filed Jan. 28, 2009 (Docket No. 10) at 1.)  Thereafter, Plaintiff
requested to amend his Complaint to allege specifically that the Essex County Vicinage of the
Superior Court further violated his civil rights by failing to allow him to testify before the grand
jury.[7]  (Id.)  Plaintiff also wished to amend the Complaint to include a meeting he had with J.
Craig Dickerson, Esq., who refused to represent Plaintiff.  (Id. at ¶¶ 1-2.)  Plaintiff also
reattached the letter he wrote to Judge Costello that he originally included in the first January 28
letter to this Court.  (Id. at ¶¶ 4-5.)

        On February 2, 2009, Plaintiff sent another letter to this Court.  (Letter from Pl., filed
Feb. 2, 2009 (Docket No. 12).)  The purpose of this letter was to attach several disposition
inquiries as amendments to the Complaint.  (Id.)  Plaintiff alleged that these inquiries were proof
that the Prosecutor's Office intended to follow through with the January 20 grand jury session

_____

        [6] Plaintiff was unclear as to whether he wanted the case transferred to the New Jersey
State Supreme Court in Trenton, or the Mercer County Superior Court.

        [7] In New Jersey, no person has a right to appear before a grand jury "unless he [or she] is
subpoenaed or invited to testify in which event he [or she] must give his [or her] consent."  State
v. Spano, 64 N.J. 566, 568 (1974).

without allowing Plaintiff the opportunity to testify.  (Id.)

      Plaintiff again expressed concern over the progression of his case on February 10, 2009.
(Letter from Pl. Req. Status Conference, filed Feb. 11, 2009 (Docket No. 14).)  At this time, he
requested a status conference with this Court.  (Id.)  He further stated that he was entitled to an
oral argument under the Americans with Disabilities Act.  (Id.)

      On February 11, 2009, the Clerk's Office received a letter from Saint Barnabas Medical
Center that was dated January 25, 2008.   (Letter from Mangala Nadkarni, filed Feb. 11, 2009
(Docket No. 13).)  The letter was written by Dr. Mangala Nadkarni, who stated that Plaintiff
suffered from "congenital hydrocephalus,[8] porencephaly,[9] seizures and severe cognitive[10] deficits
as a result of his neurological condition."  (Id.)  Dr. Nadkarni stated that Plaintiff has been on

--------

[8] Hydrocephalus is defined as a:

> pathologic condition characterized by an abnormal accumulation of
> cerebrospinal fluid, usually under increased pressure, within the
> cranial vault and subsequent dilation of the ventricles.  Interference
> with the normal flow of cerebrospinal fluid may result from
> increased secretion of the fluid, obstruction within the ventricular
> system (noncommunicating or intraventricular hydrocephalus), or
> defective resorption from the cerebral subarachnoid space
> (communicating or extraventricular hydrocephalus), caused by
> developmental anomalies, infection, trauma, or brain tumors.

MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 1554 (6th ed.
2002) (hereinafter "MOSBY'S").

[9] Porencephaly is defined as a "development or presence of abnormal cysts or cavities in
the brain tissue, usually communicating with a lateral ventricle; they may or may not cause
symptoms."  Dorlands Medical Dictionary,
http://www.mercksource.com/pp/us/cns/cns_hl_dorlands_split.jsp?pg=/ppdocs/us/common/dorla
nds/dorland/seven/000085380.htm.

[10] Cognitive refers to the "mental processes of comprehension, judgment, memory, and
reasoning, as contrasted with emotional and volitional processes."  MOSBY'S at 389.

medication for his seizures since he was born.  (Id.)  Moreover, Plaintiff had several shunt[11]

surgeries throughout his lifetime, with the most recent coming April of 2007.  (Id.)

Dr. Nadkarni maintained that he has taken care of Plaintiff since March of 2006, and

continues to do so presently.  (Id.)  According to Dr. Nadkarni, Plaintiff appears "normal," but is

severely impaired and "not able to follow [a] two-step command."  (Id.)  These reports are

allegedly confirmed by reports of MRI,[12] CT,[13] and EEG[14] reports.  (Id.)  Dr. Nadkarni reported

that Plaintiff was "extremely stressed" because of his multiple court appearances.  (Id.)

Furthermore, according to Dr. Nadkarni, stress can lower an individual's threshold for seizures,

and therefore, the Doctor stated that Plaintiff will benefit if his case is expedited.  (Id.)

Finally, Plaintiff moved to amend his complaint so as to consolidate the claims he filed

under this docket number (08-5801) and docket number 08-5603.  (Mot. to Am. and Consolidate,

filed Feb. 17, 2009 (Docket No. 15).)[15]

---

[11] A shunt is "a tube or device implanted in the body to redirect a body fluid from cavity or vessel to another."  MOSBY'S at 1577.

[12] An MRI refers to Magnetic Resonance Imaging.  An MRI "is the method of choice for detecting a growing number of disease processes."  MOSBY'S at 1042.

[13] CT is an abbreviation for Computed Tomography.  MOSBY'S at 457.  Computed Tomography is "a radiographic technique that produces an image of a detailed cross-section of tissue."  MOSBY'S at 408.

[14] EEG is an abbreviation for electroencephalogram.  MOSBY'S at 573.  An electroencephalogram is "an instrument for receiving and recording the electric potential produced by the brain cells."  MOSBY'S at 580.

[15] While this motion would have been denied as moot, Plaintiff withdrew this motion on March 27, 2009.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

At the earliest practicable time, this Court must dismiss in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2).

This Court must read the complaint as broadly as possible, construing it liberally in favor of Plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-521 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  This Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

## III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  In relevant part, section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Therefore, a Plaintiff must first allege the violation of a right secured by the Constitution or laws of the United States, and second, must allege that the deprivation was committed or caused by a person acting under color of State law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

10

IV.  <u>ANALYSIS</u>

Plaintiff alleges that the Essex Vicinage of the Superior Court of New Jersey, the Essex County Prosecutor's Office, the New Jersey Public Defender's Office Essex County Adult Region, and Charles, Ann, and Ryan Dolin have knowingly violated Plaintiff's Constitutional rights as a disabled United States citizen.

**A. Superior Court of New Jersey**

The Eleventh Amendment of the United States Constitution prohibits "any suit in law or equity, commenced or prosecuted against one of the United States . . . ."  Thus, the Supreme Court has held that citizens may not bring suit against their own state.  <u>See</u> <u>Pennhurst State School and Hosp. v. Halderman</u>, 465 U.S. 89, 98-99 (1984).  Sovereign immunity applies "'even though the state is not named a party to the action as long as the state is the real party in interest.'" <u>Carter v. City of Philadelphia</u>, 181 F.3d 339, 347 (3d Cir. 1999) (quoting <u>Fitchik v. New Jersey Transit Rail Operations, Inc.</u>, 873 F.2d 655, 659 (3d Cir. 1989)).  Therefore, "the state is the real party-in-interest if the named defendant is in fact an 'arm of the state.'" <u>Davis v. Lakewood</u>, No. 03-1025, 2005 WL 1863665 at *3 (D.N.J. Aug. 4, 2005) (citing <u>Chisolm v. McManimon</u>, 275 F.3d 315, 323 (3d Cir. 2001)).

To determine whether an entity should be considered an arm of the state, this Court must consider three factors.  <u>See</u> <u>Fitchik</u>, 873 F.2d at 659.  These factors are: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy."  <u>Chisolm</u>, 275 F.3d at 323.

11

The Superior Court of New Jersey and its vicinages are part of the judicial branch of the State of New Jersey and are considered "arms" of the state of New Jersey.  Johnson v. New Jersey, 869 F. Supp 289, 296 (D.N.J. 1994).  Therefore, the Superior Court is protected from any claim for damages by virtue of the Eleventh Amendment, which grants the State sovereign immunity.  Id.  As such, the claim against the Superior Court will be dismissed, with prejudice.

**B.  The Prosecutor's Office**

The Eleventh Amendment also bars a plaintiff's claims against a county's prosecutor's office when the prosecutor's office is acting as a state agent rather than in an individual capacity.  See Banda v. Burlington County, No. 06-5131, 2008 WL 241385 at *1 (3d Cir. Jan. 30, 2008).  Moreover, this Court has previously held that "New Jersey county prosecutor's offices are entitled to Eleventh Amendment immunity from suits arising out of the exercise of prosecutorial powers."  Kandil v. Yurkovic, No. 06-4701 (JAG), 2007 WL 4547365 at *4 (D.N.J. Dec. 18, 2007).  Here, the Prosecutor's Office was acting in its official capacity.  Plaintiff does not present any claims against the Prosecutor's Office that do not arise out of the exercise of their prosecutorial powers.  Therefore, the claim against the Prosecutor's Office will be dismissed, with prejudice.

**C.  Public Defender's Office**

Court-appointed counsel, public defenders, and investigators employed by a public defender are generally immune from civil liability under 42 U.S.C. § 1983 when acting within the scope of their professional duties.  Black v. Bayer, 672 F.2d 309, 317 (3d Cir.), cert. denied, 459 U.S. 916 (1982); Tower v. Glover, 467 U.S. 914, 923 (1984)

("state public defenders are not immune from liability under § 1983 for intentional

misconduct, 'under color of' state law, by virtue of alleged conspiratorial action with state

officials that deprives their clients of federal rights").

Further, although not immune from suit or liability, an attorney may be entitled to

dismissal of a civil rights action on the ground that it fails to state a claim, because

lawyers are typically not considered "state actors."  "[A] lawyer representing a client is

not, by virtue of being an officer of the court, a state actor 'under color of state law'

within the meaning of § 1983."  Polk County v. Dodson, 454 U.S. 312, 318 (1981).

Similarly, a public defender "does not act under color of state law when performing a

lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  Id. at

325.  Nevertheless, an "otherwise private person acts 'under color of' state law, when

engaged in a conspiracy with state officials to deprive a defendant of federal rights."

Tower v. Glover, 467 U.S. 914, 914 (1984).

Here, Plaintiff alleges no facts that would suggest that the Public Defender's

Office or Dennis Friel, the individual attorney representing Plaintiff, acted in any capacity

other than their traditional capacity as counsel.  Additionally, J. Craig Dickerson did not

represent Plaintiff in any capacity.  Accordingly, all claims against the Public Defender's

Office, Dennis Friel, and J. Craig Dickerson will be dismissed, with prejudice.

Moreover, the Office of the Public Defender is immune from suit under the

Eleventh Amendment.[16]  Neither states, nor governmental entities that are considered

---

[16] The Office of the Public Defender is an agency established by the State of New Jersey, in the Executive Branch, to fulfill the State's obligation to provide representation to indigent criminal defendants.  The Public Defender is appointed by the Governor with the advice and

arms of the state for Eleventh Amendment purposes, are persons within the meaning of

§ 1983. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 64, 70-71 and n.19 (1989);

<u>Grabow v. Southern State Correctional Facility</u>, 726 F. Supp. 537, 538-39 (D.N.J. 1989)

(the New Jersey Department of Corrections is not a person under § 1983).  Thus, the

Office of the Public Defender is not a "person" subject to suit under § 1983.

**D.  The Dolins**

Finally, Plaintiff alleges that the Dolins violated his Constitutional and civil rights

as well.  (Doc. Entry No. 4.)  Plaintiff  is attempting to bring this cause of action under 42

U.S.C. § 1983.  As previously stated, to state a claim for relief under § 1983, a plaintiff

must allege, first, a violation of a right secured by the Constitution or laws of the United

States and, second, that the alleged deprivation was committed or caused by a person

acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v.</u>

<u>Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, the Dolins acted as individuals and are not state actors, as required for

bringing a claim pursuant to § 1983.  Therefore, the Dolins are not subject to suit under

§ 1983, and the claims against them will be dismissed, with prejudice.

---

consent of the Senate.  The Public Defender is authorized to enter into contracts as provided by
law.  The Public Defender must make an annual report to the Legislature on the operation of the
Office.  <u>See</u> New Jersey Statutes, Title 2A, Chapter 158A.  Therefore, the Office of the Public
Defender is an arm of the state entitled to Eleventh Amendment immunity.  <u>Cf.</u>  <u>Smith v.</u>
<u>LaFollette</u>, 23 F.3d 410 (7th Cir. 1994) (Wisconsin Office of the Public Defender is a state
agency entitled to Eleventh Amendment immunity); <u>Allen v. Feldman</u>, 2004 WL 1254001. (D.
Del. 2004) (Delaware Office of the Public Defender is a state agency entitled to Eleventh
Amendment immunity).

V.  <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's complaint must be dismissed, with prejudice, for failing to state a claim upon which relief may be granted.  Plaintiff's complaint against the Superior Court is barred by the Eleventh Amendment and will be dismissed, with prejudice.  Plaintiff's claim against the Public Defender's Office, Dennis Friel, and J. Craig Dickerson is barred by the Eleventh Amendment, and will be dismissed, with prejudice.  Similarly, Plaintiff's claim against the Prosecutor's Office is barred by the Eleventh Amendment, and will be dismissed, with prejudice.  Finally, the Dolins are not state actors, as required by 42 U.S.C. § 1983.  Therefore, any claims against them must be dismissed, with prejudice, as well.


Date: May 8, 2009                      S/Joseph A. Greenaway, Jr.
                                       JOSEPH A. GREENAWAY, JR., U.S.D.J.

15